1

2

3

4

5

6                          **UNITED STATES DISTRICT COURT**

7                          **EASTERN DISTRICT OF CALIFORNIA**

8

9    JUAN VILLALON,                          Case No.  1:20-cv-01830-SKO

10                  Plaintiff,

                                             **ORDER ON PLAINTIFF'S SOCIAL**
11         v.                                **SECURITY COMPLAINT**

12   KILOLO KIJAKAZI,                         (Doc. 1)
     Acting Commissioner of Social Security,
13

14                  Defendant.
     _____/
15

16

17                          **I.      INTRODUCTION**

18         On December 29, 2020, Plaintiff Juan Villalon ("Plaintiff") filed a complaint under 42

19   U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of

20   Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental

21   Security Income ("SSI") under Title XVI of the Social Security Act (the "Act").  (Doc. 1.)  The

22   matter is currently before the Court on the parties' briefs, which were submitted, without oral

23   argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

24                          **II.      BACKGROUND**

25         Plaintiff protectively filed an application for SSI payment on December 8, 2017, alleging

26   that he became disabled on December 8, 2017, due to severe gout in his right knee, post-traumatic

27   _____

28   [1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 8, 13.)

stress disorder ("PTSD"), paranoia, schizophrenia, type two diabetes, high blood pressure, obesity, and "anger outburst." (Administrative Record ("AR") 15, 392–99, 417.)  Plaintiff was born on April 11, 1984, and was 33 years old as of the alleged onset date.  (AR 26, 413.)  He completed 11th grade and has no relevant past work experience.  (AR 26, 30, 204, 418.)

### A.      Relevant Medical Evidence[2]

#### 1.      Dawn Miller

On June 11, 2015, Dawn Miller, a licensed clinical social worker ("LCSW"), submitted a mental residual functional capacity ("RFC")[3] statement on behalf of Plaintiff.  (AR 786–89.)  LCSW Miller assessed Plaintiff with major depressive disorder and PTSD.  (AR 786.)  According to LCSW Miller, Plaintiff exhibited high levels of anxiety, which impaired his ability to interact with others and his ability to function within typical community settings.  (AR 788.)  Specifically, LCSW Miller opined that Plaintiff was unable to ride in cars, be in public areas, and interact in social settings and with unfamiliar individuals.  (AR 789.)

#### 2.      Prior Administrative Medical Findings ("PAMF")[4]

In January 2018, state agency consultants M. Ormsby, M.D., and Nadine J. Genece, Psy.D., reviewed Plaintiff's medical history at the initial consideration level.  (AR 232–45.)  Dr. Ormsby assessed Plaintiff's physical RFC, opining that Plaintiff could: lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit and/or walk for five hours in an eight-hour workday; sit about six hours in an eight-hour workday; occasionally push and/or pull with both lower extremities, climb ramps/stairs, balance, kneel, crouch, and crawl; and never climb ladders, ropes, or scaffolds. (AR 240–41.)  Dr. Ormsby further opined that Plaintiff should avoid concentrated exposure to

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.' "  *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

[4] According to the revised regulations, for claims filed on or after March 27, 2017, the terms "prior administrative medical finding" or "PAMF" refer to the findings made by state agency medical and psychological consultants who review claims at the initial and reconsideration levels.  *See* 20 C.F.R. § 416.913(a)(5).

extreme cold, extreme heat, vibrations, fumes, and hazards.  (AR 241.)

Dr. Genece assessed Plaintiff's mental RFC, opining that Plaintiff was: moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, maintain pace and persistence, and interact appropriately with the general public.  (AR 242–43.)  Dr. Genece further opined that Plaintiff was otherwise not significantly limited.  (AR 242–43)

In May 2018, state agency consultants Gideon H. Lowell III, M.D., and Heather M. Abrahimi, Psy.D., reviewed the medical records at the reconsideration level.  (AR 247–60.)  Dr. Lowell agreed with Dr. Ormsby's findings, and Dr. Abrahimi agreed with Dr. Genece's findings. (*See* AR 255–58.)

### 3.   Family Healthcare

On May 24, 2018, Plaintiff presented for a behavioral health visit.  (AR 670.)  He reported he had always had an interest in music and enjoyed coming up with his own lyrics and helping others with their skills.  (AR 670.)

On February 24, 2020, Plaintiff presented for a behavioral health evaluation.  (AR 834.) Plaintiff reported severe depression and anxiety, but he also stated that he could not take some of his medications for anxiety and depression due to his cannabis use.  (AR 834–35.)

### 4.   Debra Martin, FNP-C

On July 12, 2018, Plaintiff presented to Debra Martin, Family Nurse Practitioner ("FNP"), for lab results.  (AR 677.)  FNP Martin noted that Plaintiff had good eye contact and was cooperative with the exam.  (AR 679.)  Plaintiff was also in no acute distress, alert, and oriented, with intact cognitive function and good judgment and insight.  (AR 679.)  During the appointment, FNP Martin reinforced the importance of exercising at least 30 minutes a day.  (AR 680.)  FNP Martin made similar advisements to Plaintiff through March 2020.  (S*ee, e.g.*, 684, 694, 701, 832.)

On September 1, 2018, Plaintiff had an appointment to go over MRI results.  (AR 681.)  He reported that while he was lifting weights upwards of 70 pounds at the gym, he experienced severe abdominal pain.  (AR 681.)  Again, upon examination, FNP Martin noted that Plaintiff had good eye contact and was cooperative.  (AR 683.)  Plaintiff was also in no acute distress, alert, and

oriented, with intact cognitive function and good judgment and insight.  (AR 683.)  Treatment notes from September 28, 2018, November 8, 2018, June 4, 2019, February 24, 2020, and March 30, 2020, recorded similar findings.  (AR 694, 701, 733, 832, 835.)  FNP Martin prescribed Plaintiff Tylenol with Codeine for his low back pain.  (AR 684; *see also* AR 723.)

On January 18, 2019, Plaintiff presented for lab results.  (AR 713.)  FNP Martin recorded that Plaintiff's low back pain due to herniated disc and lumbar spine was controlled with Tylenol with Codeine and allowed for activities of daily living.  (AR 713.)

On June 4, 2019, Plaintiff appeared to go over his test and lab results.  (AR 730.)  He reported that his pain was a zero on a scale of one to ten.  (AR 732.)

On December 11, 2019, Plaintiff reported spasms in the middle of his back.  (AR 853.)  Upon examination, he was found to have pain with movement, but normal sensation and range of motion in his lumbar spine, with 5/5 strength.  (AR 856.)

On December 20, 2019, Plaintiff presented for a follow-up appointment.  (AR 848.)  He reported he had been exercising regularly.  (AR 848.)  FNP Martin observed that Plaintiff was pleasant, alert, oriented, and in no acute distress.  (AR 850.)

On February 19, 2020, FNP Martin submitted a medical source statement on behalf of Plaintiff, assessing Plaintiff's physical RFC.  (AR 790–93.)  FNP Martin diagnosed Plaintiff with chronic low back pain with sciatica, intervertebral disc disorder of the lumbar spine, chronic gout, schizophrenia, PTSD, anxiety disorder, and major depressive disorder.  (AR 790.)  FNP Martin opined that Plaintiff could: lift and carry five pounds or less frequently and ten pounds occasionally; sit for about one hour in an eight-hour workday; stand and walk for about two hours in an eight-hour workday; and climb stairs and ramps.  (AR 790–92.)  She further opined that Plaintiff could not climb ladders or scaffolds or operate arm/leg controls from a sitting position for six or more hours in an eight-hour workday.  (AR 792.)  According to FNP Martin, Plaintiff would need to lie down to rest for 30-minute periods, totaling two hours in an eight-hour workday, due to fatigue and pain.  (AR 791.)  She also opined that Plaintiff would need to take unscheduled breaks every two hours to rest for an hour, and Plaintiff's legs would need to be elevated for 50 percent of the workday.  (AR 791–92.)  FNP Martin indicated that Plaintiff would need to use an assistive device

for standing and walking, and that Plaintiff needed to avoid temperature extremes, dust, and fumes. (AR 792.)  Based on Plaintiff's limitations, FNP Martin opined that Plaintiff would be: "off task" for more than 30 percent of the workday; absent from work for five or more days a month; and unable to complete an eight-hour workday 5 or more days each month.  (AR 793.)

### 5. Sierra View Medical Center

On January 2, 2020, Plaintiff presented to the emergency room complaining of nausea, vomiting, and diarrhea.  (AR 807.)  Plaintiff reported having back spasms but no abdominal pain. (AR 807.)  Upon examination, Plaintiff was found to have no back pain and normal range of motion in his back and extremities.  (AR 808–09.)

On January 19, 2020, Plaintiff presented to the emergency room complaining of anxiety and chest pain.  (AR 794.)  Plaintiff reported that he had a history of heartburn.  (AR 794.)  A review of Plaintiff's systems was normal.  (AR 794.)  Plaintiff was discharged in stable condition and advised to take ibuprofen or Tylenol as needed for pain.  (AR 797–98.)

### 6. Saint George Spine and Pain Institute

On February 20, 2020, Plaintiff complained of lower back pain and right knee pain.  (AR 902.)  During the examination, Plaintiff displayed no pain behavior and was in no acute distress. (AR 902.)  Plaintiff was found to have positive straight leg raising and 5/5 muscle strength in all of his extremities.  (AR 902.)

### B. Plaintiff's Statement

On December 18, 2017, Plaintiff completed an adult function report. (AR 433–41.)  Plaintiff lives in an apartment with family.  (AR 433.)  When going out, he travels by riding in a car.  (AR 436.)  Plaintiff goes grocery shopping once a month.  (AR 436.)

### C. Administrative Proceedings

The Commissioner initially denied Plaintiff's application for SSI benefits on January 29, 2018, and again on reconsideration on May 9, 2018.  (AR 263, 271.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 277.)  At the hearing on May 5, 2020, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions.  (AR 40–64.)

1

**D.**   **The ALJ's Decision**

2    In a decision dated July 1, 2020, the ALJ found that Plaintiff was not disabled, as defined by

3 the Act.  (AR 15–27.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §

4 416.920.  (AR 18–27.)  The ALJ determined that Plaintiff had not engaged in substantial gainful

5 activity since December 8, 2017, the application date (step one).  (AR 18.)  At step two, the ALJ

6 found Plaintiff's following impairments to be severe:  right knee gout and osteoarthritis;

7 degenerative disc disease; and obesity.   (AR 18.)   Plaintiff did not have an impairment or

8 combination of impairments that met or medically equaled one of the listed impairments in 20

9 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 20.)

10    The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and

11 five.  *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your

12 residual functional capacity . . . . We use this residual functional capacity assessment at both step

13 four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff

14 had the RFC:

15
16
17
18
19
> to perform light work as defined in 20 CFR [§] 416.967(b) except that he may sit six hours in a workday and stand five hours in a workday.  [Plaintiff] may never climb ladders, ropes or scaffolds or be exposed to unprotected heights or hazardous work environments.  He may occasionally climb stairs or ramps; occasionally balance; stoop, crouch, kneel or crawl; but may have no operation of foot controls with either lower extremity.  [Plaintiff] must avoid concentrated exposure to extreme heat and extreme cold, as well as to vibration, fumes, dust and other pulmonary irritants.  Finally, [Plaintiff] would be expected to sit 5 minutes hourly while remaining on task.

20 (AR 21.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected

21 to cause the alleged symptoms[,]" she rejected Plaintiff's subjective testimony as "not entirely

22 consistent with the medical evidence and other evidence in the record."  (AR 22.)

23    The ALJ determined that Plaintiff had no past relevant work (step four).  (AR 26.)  The ALJ

24 ultimately concluded that, given his RFC, Plaintiff was not disabled because he could perform a

25 significant number of other jobs in the national economy, specifically routing clerk, mail clerk,

26 folding machine operator, final assembler, and document preparer (step five).  (AR 26–27.)

27

28

On August 7, 2020, Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied review on November 2, 2020.  (AR 1, 7.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 416.1481.

### III.    LEGAL STANDARDS

#### A.    Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). However, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 1382c(a)(3)(B).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled.  If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also* 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent

1    steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

2         "The claimant carries the initial burden of proving a disability in steps one through four of

3    the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir.

4    1989)). "However, if a claimant establishes an inability to continue [his] past work, the burden

5    shifts to the Commissioner in step five to show that the claimant can perform other substantial

6    gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

7         **B.    Scope of Review**

8         "This court may set aside the Commissioner's denial of [social security] benefits [only] when

9    the ALJ's findings are based on legal error or are not supported by substantial evidence in the record

10   as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such

11   relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

12   *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305

13   U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a

14   preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

15        "This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec.*

16   *Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed

17   only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell*

18   *v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's

19   conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*,

20   *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more

21   than one rational interpretation, the court may not substitute its judgment for that of the

22   Commissioner." (citations omitted)).

23        In reviewing the Commissioner's decision, the Court may not substitute its judgment for that

24   of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must

25   determine whether the Commissioner applied the proper legal standards and whether substantial

26   evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d

27   909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply

28   by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa*

*v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Circ. 2008) (quoting *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends the ALJ erred in his evaluation of FNP Martin's and LCSW Miller's opinions, or alternatively, by failing to develop the record by obtaining an updated opinion of Plaintiff's mental functioning.  (*See* Doc. 25 at 10–15.)  For the reasons stated below, the Court finds that the ALJ did not err.

### A.    The ALJ Did Not Err in Evaluating the Medical Opinion Evidence

#### 1.    Legal Standard

On January 18, 2017, the Social Security Administration published comprehensive revisions to its regulations regarding the evaluation of medical evidence.  *See* 82 Fed. Reg. 5844.  For applications filed on or after March 27, 2017, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ("PAMF") [i.e., state-agency medical consultants], including those from [a claimant's] medical sources."  20 C.F.R. § 416.920c(a).  Although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions."  20 C.F.R. § 416.920c(a)–(b).  In determining how "persuasive" the opinions of a medical source or PAMF are, an ALJ must consider the following factors:

supportability, consistency, treatment relationship, specialization, and "other factors."   *Id.* at §
416.920c(b), (c)(1)–(5).

The ALJ's duty to articulate a rationale for each factor varies.  20 C.F.R. § 416.920c(a)–(b).
In all cases, the ALJ must at least "explain how [the ALJ] considered" the supportability and
consistency factors, as they are "the most important factors."   *Id.* at § 416.920c(b)(2).   For
supportability, the regulations state: "[t]he more relevant the objective medical evidence and
supporting explanations presented by a medical source are to support his or her medical opinion(s)
or prior administrative medical finding(s), the more persuasive [the opinion or PAMF] will be."   *Id.*
at § 416.920c(c)(1).   For consistency, the regulations state: "[t]he more consistent a medical
opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources
and nonmedical sources in the claim, the more persuasive [the opinion or PAMF] will be."   *Id.* at
§ 416.920c(c)(2).

The ALJ is required to articulate findings on the remaining factors (relationship with the
claimant, specialization, and "other") only where "two or more medical opinions or prior
administrative medical findings about the same issue" are "not exactly the same," and both are
"equally well-supported [and] consistent with the record."  20 C.F.R. § 416.920c(b)(2) & (3).   An
ALJ may address multiple opinions from a single medical source in one analysis.   *Id.* at
§ 416.920c(b)(1).

Recently, the Ninth Circuit has issued the following guidance regarding treatment of
physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw
> according special deference to the opinions of treating and examining physicians on
> account of their relationship with the claimant.  *See* 20 C.F.R. § 404.1520c(a) ("We
> will not defer or give any specific evidentiary weight, including controlling weight,
> to any medical opinion(s) . . . , including those from your medical sources.").   Our
> requirement that ALJs provide "specific and legitimate reasons" for rejecting a
> treating or examining doctor's opinion, which stems from the special weight given
> to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the
> revised regulations. Insisting that ALJs provide a more robust explanation when
> discrediting evidence from certain sources necessarily favors the evidence from those
> sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  Under the new regulations, "the decision to
discredit any medical opinion[] must simply be supported by substantial evidence."  *Id.* at 787.

**2. FNP Martin**

On February 19, 2020, FNP Martin submitted a medical source statement on Plaintiff's behalf, opining, as relevant here (*see* Doc. 16 at 12), that Plaintiff could sit for about four hours in an eight-hour workday and stand/walk for less than two hours (i.e., perform less than sedentary work). (AR 458–60.)  In finding FNP Martin's opinion unpersuasive, the ALJ stated:

> [FNP Martin] opined [Plaintiff] would miss more than five days a month, be off task 30%, perform at 50% efficiency, need to elevate his legs 50% of the time, needs breaks every two hours, sit for an hour, stand two hours, frequently lift five pounds or less, and occasionally lift ten pounds.  This was supported noting medication side effects including lethargy, drowsiness, fatigue, imaging and complaints of pain. However, these limitations are not supported by [FNP Martin's] own records that appear absent for advisement to elevate his lower extremities or pattern of missed appointments that would support this opinion.  Treatment records show [Plaintiff] reported his pain was controlled with medication and he denied side effects.  While evidence such as imaging and positive straight leg raise testing support severe limitations, [Plaintiff] also has full range of motion, 5/5 strength, and conservative treatment, more consistent with the residual functional capacity.  This opinion is also inconsistent with [Plaintiff's] testimony that he continues to do ten-pound curl and leg lifts.

(AR 25, internal citations omitted.)  The ALJ ultimately found Drs. Ormsby's and Lowell's opinions that Plaintiff could perform light work but stand/walk for five hours and sit for six hours, with additional limitations, more persuasive.  (*See* AR 24–25.)

The Court concludes that the ALJ properly evaluated the supportability and consistency of FNP Martin's opinion.  As to supportability, the ALJ properly considered FNP Martin's opinion was partially supported by treatment notes—indicating medication side effects of lethargy, drowsiness, and fatigue—imaging results, and Plaintiff 's reported complaints of pain, but that the absence of certain advisements in her treatment notes undermined the supportability of her opinion (AR 25).  In particular, FNP Martin opined that Plaintiff would need to elevate his legs 50% of the time, but her treatment notes do not appear to contain any notation regarding the need by Plaintiff to elevate his legs to alleviate his symptoms.  Treatment notes reflect that FNP Martin consistently reinforced the importance of exercising at least 30 minutes a day from 2018 through 2020 (*see, e.g.*, 680, 684, 694, 701, 832), and FNP Martin recorded in December 2019 that Plaintiff was exercising regularly (AR 848).  The lack of support by FNP Martin's own treatment notes and objective findings was a proper consideration in evaluating the supportability of her opinion. *See, e.g.*,

1    *Trezona v. Comm'r of Soc. Sec.*, No. 1:21-CV-00792-EPG, 2022 WL 1693493, at *3 (E.D. Cal.

2    May 26, 2022); *Amanda B. v. Comm'r, Soc. Sec. Admin.*, No. 1:20-CV-01507-YY, 2022 WL

3    972408, at *7 (D. Or. Mar. 31, 2022).

4         As to consistency, the ALJ found FNP Martin's opinion concerning Plaintiff's mental

5    limitations generally inconsistent with the other medical evidence.  Although the ALJ observed that

6    some of the medical evidence could support severe limitations, she determined that lesser limitations

7    were warranted in view of Plaintiff's normal examination findings and conservative treatment.  (AR

8    25.)  For example, treatment records indicate that Plaintiff was taking Tylenol with Codeine for his

9    back pain, and in January 2019, FNP Martin noted that Plaintiff's low back pain was controlled with

10   Tylenol.  (AR 684, 713, 723.)  In June 2019, Plaintiff reported that his pain was a zero on a scale of

11   one to ten.  (AR 732.)  In December 2019, while Plaintiff had pain with movement, the attending

12   medical provider noted that Plaintiff had normal sensation and tone with 5/5 strength and no overt

13   instability.  (AR 856.)  In January 2020, Plaintiff was noted to have no back pain and full range of

14   motion in his extremities and back.  (AR 809.)   In February 2020, Plaintiff displayed no pain

15   throughout his examination and was in no acute distress; he was found to have 5/5 muscle strength

16   in all of his extremities.  (AR 902.)

17        FNP Martin's opinion also conflicted with the other opinion evidence in the record that the

18   ALJ found more persuasive.  (AR 24–25.)  The state agency physicians opined that Plaintiff could

19   perform light work but stand/walk for five hours and sit for six hours, with additional postural and

20   environmental limitations.  (AR 240–41, 255–56.)  Plaintiff does not challenge the ALJ's deeming

21   of these opinions "persuasive."

22        Based on the objective medical evidence and the opinion evidence, the ALJ's finding that

23   FNP Martin's opinion was not fully supported and inconsistent with the longitudinal record as a

24   whole is legally sufficient and supported by substantial evidence.  While the medical record reflects

25   that Plaintiff has physical impairments, it was nonetheless reasonable for the ALJ to conclude that

26   the record did not support the severity of FNP Martin's opined restrictions.  *See Batson v. Comm'r*

27   *Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject

28   to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion.").

### 3. LCSW Miller

In assessing LCSW Miller's opinion, the ALJ stated:

> The 2015 opinion by [LCSW Miller], who saw [Plaintiff] ten times and opined his level of anxiety[] impaired his ability to function with others and in common settings and ma[d]e him unable to ride in cars or be[] in public spaces is unpersuasive. While [LCSW Miller] supported this statement with diagnosis, it evaluates [Plaintiff's] functioning before his current application, is remote, and not reflective of his current functioning, such as being able to ride in cars out of town, shop, and help people with lyrics, as well as the limited treatment and no evidence of symptom exacerbation requiring escalating care[.]

(AR 25.)

The Court finds that the ALJ properly evaluated the supportability and consistency of LCSW Miller's opinion. The ALJ reasoned that LCSW Miller's opinion was supported by her treatment relationship with Plaintiff, but was inconsistent with the other medical evidence. In particular, the ALJ noted that LCSW Miller's 2015 opinion predated Plaintiff's current application, which was filed on December 8, 2017, alleging disability on that date. Medical opinions that predate the alleged onset of disability are of limited relevance. *See Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989). This bears true here, where, as the ALJ observed, LCSW Miller's opinion is no longer reflective of Plaintiff's current functioning. LCSW Miller opined that Plaintiff's anxiety impaired his ability to interact with others, such that he was unable to ride in cars or be in public spaces due to anxiety (AR 789), but Plaintiff himself indicated in his 2017 adult function report that he does ride in cars and is able to go grocery shopping (AR 436). The evidence also shows that Plaintiff lives with family, enjoys spending time with his teenage son, and helps others with their rap lyrics. (AR 433, 670, 834.) At various medical appointments throughout 2018 to 2020, Plaintiff was also consistently noted to have good eye contact and to be cooperative. (*See, e.g.*, AR 679, 683, 694, 701, 835.) Therefore, as the ALJ concluded, the evidence post-dating LCSW Miller's opinion is inconsistent with her opinion regarding Plaintiff's ability to interact with others. Accordingly, the ALJ's decision to find LCSW Miller's opinion unpersuasive is supported by substantial evidence.

### B. The ALJ Had No Duty to Develop the Record

Alternatively, Plaintiff contends that the ALJ was required to obtain an updated opinion on Plaintiff's mental functioning, and by failing to do so, the ALJ did not meet her duty to develop the

1    record.  (Doc. 25 at 14–15.)  This contention is unavailing.  "An ALJ's duty to develop the record

2    further is triggered only when there is ambiguous evidence or when the record is inadequate to allow

3    for proper evaluation of the evidence."  *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir.

4    2001).  Here, Plaintiff has not demonstrated that the record was ambiguous or inadequate to allow

5    for proper evaluation.  As set forth above, the state agency physicians assessed Plaintiff's medical

6    records and offered their opinions as to his mental functioning.  (AR 242–43, 257–58.)

7         An updated opinion is not required simply because additional medical evidence is received

8    after the state agency physicians had already reviewed Plaintiff's records.  *See de Hoog v. Comm'r*

9    *of Soc. Sec.*, No. 2:13-CV-0235-KJN, 2014 WL 3687499, at *7 (E.D. Cal. July 23, 2014).  Such an

10   occurrence is quite common.  *See id.* (explaining that "[i]n virtually every case further evidence is

11   received after the state agency physicians render their assessments—sometimes additional evidence

12   and records are even received after the ALJ hearing.  For that very reason, the ALJ is tasked with

13   considering the evidence in the record as a whole.").  This is also not a case where subsequent

14   "objective evidence suggest[ed] a condition that could have a material impact on the disability

15   decision."  *Molina v. Berryhill*, No. 2:17-CV-01991 CKD, 2018 WL 6421287, at *3 (E.D. Cal. Dec.

16   6, 2018).  *Cf. Goodman v. Berryhill*, No. 2:17-CV-01228 CKD, 2019 WL 79016, at *5 (E.D. Cal.

17   Jan. 2, 2019) (subsequent medical evidence giving rise to duty to develop the record documented

18   "significant medical events relevant to plaintiff's physical condition.")

19        The records Plaintiff directs the Court to review (*see* Doc. 25 at 15) show relatively

20   unremarkable findings.  For example, Plaintiff cites to a medical record documenting his visit to the

21   emergency room complaining of mid-chest pain and anxiety in January 2020.  (AR 794–98.)  The

22   record, however, also reflected that Plaintiff reported that he had history of heartburn, and that all

23   systems reviewed were normal.  (AR 794.)  Plaintiff was ultimately discharged in stable condition,

24   with instructions to take ibuprofen or Tylenol as needed.  (AR 798.)  Plaintiff also cites to a treatment

25   note reflecting that he had reported severe depression and anxiety.  (AR 834.)  But as the ALJ

26   observed, Plaintiff also reported during that visit that he could not take some of the medications he

27   wanted to take for his anxiety and depression because of his cannabis use—which calls into question

28   whether Plaintiff's symptoms are as severe as he alleges.  (AR 835.)

1    In sum, none of the evidence cited by Plaintiff establishes the existence of any new condition

2  not assessed by the ALJ, or shows a worsening of Plaintiff's existing conditions. Plaintiff does not

3  demonstrate otherwise. The Court therefore finds that the ALJ was not obligated to further develop

4  the record.

5                              **V.      CONCLUSION AND ORDER**

6    Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

7  evidence and is therefore AFFIRMED.  The Clerk of this Court is DIRECTED to enter judgment in

8  favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff

9  Juan Villalon.

10

11  IT IS SO ORDERED.

12  Dated:   **September 21, 2022**                      */s/ Sheila K. Oberto*

13                                                UNITED STATES MAGISTRATE JUDGE